Date signed December 08, 2010



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DOUGLAS F. SOWERS | : | Case No. 09-27911PM |
| SUSAN L. SOWERS | : | Chapter 7 |
| | : | |
| Debtors | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| PNC BANK, N.A. | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 10-0240PM |
| | : | |
| DOUGLAS F. SOWERS | : | |
| SUSAN L. SOWERS | : | |
| Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

This adversary proceeding came before the court for argument on the Motion of the Plaintiff, PNC Bank, N.A. ("PNC"), for Summary Judgment on its Complaint to deny dischargeability of debts pursuant to 11 U.S.C. § 523(a)(A) and (B).  In support of its motion, PNC filed a memorandum, an affidavit and various exhibits, including a transcript of the meeting of creditors held pursuant to 11 U.S.C. § 341 in the Debtors' bankruptcy case.

The Complaint filed in two counts alleges that, on February 9, 2007, the Debtors, as President and Office Manager of Beaver Creek Construction, Inc. ("BCC"), entered into a Business Loan Agreement (the "BLA") with the Plaintiff, whereby it borrowed the sum of $35,555.00.  A commercial security agreement, promissory note and commercial guaranty were also executed that day by the Debtors, copies of which are attached to the affidavit filed in

support of the Motion. The promissory note called for 35 monthly payments of $1,140.90. Apparently, in the course of the parties' dealings after the BCC fell into default, a confessed judgment was entered in the District Court of Maryland for Washington County on June 24, 2009, against both Debtors in the sum of $17,494.60, plus interest, costs and attorney's fees. This bankruptcy case under Chapter 7 was filed on September 22, 2009, 89 days after the entry of that judgment.

Plaintiff's case is based upon the six-page printed BLA wherein Debtors warranted *inter alia*:

> Borrower is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the States of Maryland. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at P.O. Box 163, 11733 Kieffer Funk Road, Chewsville, MD 21721-0163. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Contrary to the representations above, Douglas Sowers, in the course of the §341 meeting of creditors, testified that BCC ceased operations in December, 2006, and that loan documents were signed after that time. The records of the Maryland State Department of Assessments and Taxation reflect that its charter was forfeited on October 3, 2008.

Debtors filed a response to the Motion for Summary Judgment, asserting that the loan documents resulted from an agreement to consolidate obligations for lines of credit held by three related corporations into a single fixed rate loan. No money is said to have passed to the Debtors or any of the corporations as a result of the execution of the documents in February 2007. Approval of the consolidation was said to have been given in September, 2006. Debtors assert that the documents that are attached as exhibits to Plaintiffs' memorandum were executed at the request of the Bank, due to the loss of the original documentation. Debtors' response also points out that the balance due on the promissory note had been reduced by more than 50% since its execution. The Debtors deny any intent to deceive and deny any detrimental reliance upon the

replacement documents. The Debtors, however, failed to submit any affidavit proof or any other document under penalty of perjury generating a genuine dispute of material fact, as required by Fed. R. Civ. P. 56(e)(2) that is made applicable to adversary proceedings by Fed. Rule of Bankruptcy Proc. 7056. In opposition to Debtors' defense is the statement under oath by an officer of the Plaintiff that "the lending bank relied on the representations of the Defendants and the borrower, Beaver Creek Construction, Inc., in evaluating and offering the extension of credit in the subject transaction."

While the complaint states counts based on 11 U.S.C. § 523(a)(2)(A) and (B), Plaintiff's Motion and memorandum in support thereof do not identify which subsection is relied upon. Instead it charges exception from discharge based upon 11 U.S.C. § 523(a), which is of no help to the court in that this statutory provision is comprised of nineteen sections, each providing a different basis for exception. As the Fourth Circuit instructs in the case of *Foley & Lardner v. Biondo*, 180 F.3d 126, 134 (CA4 1999), in a case under 11 U.S.C. § 523(a)(2)(A), "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from action; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." A debtor's state of mind is a question of fact. *Id*. The second rung of 11 U.S.C. § 523(a)(2)(B) deals with statements of financial condition and provides:

>(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>\*         \*         \*         \*         \*
>
>(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by--
>
>\*         \*         \*         \*         \*
>
>>(B) use of a statement in writing--
>>(i) that is materially false;
>>(ii) respecting the debtor's or an insider's financial condition;
>>(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>(iv) that the debtor caused to be made or published with intent to deceive.

Summary judgment is appropriate when there is no genuine issue of material fact given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, the court examines the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Smith v. Virginia Commonwealth Univ.*, 84 F.3d 672, 675 (CA4 1996) (en banc). However, the non-moving party may not rely upon mere allegations. Fed.R.Civ.P. 56(e)(2) sets forth the following requirement:

> **Rule 56. Summary Judgment**
> **(e) Affidavits; Further Testimony.**
>   **(2) Opposing Party's Obligation to Respond.** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (CA4 1994).

The court cannot find on the record that the Plaintiff has made out a case as to § 523(a)(2)(B). Because of the payments that must to have been made after the execution of the documents, the court cannot find from the affidavit submitted by PNC that the Debtors adopted the statement contained in the BLA with the intent to deceive. It is just as likely to infer from their conduct afterward in making payments, resulting in the principal of the debt being reduced by more than half, that at the time they executed the documents they intended to pay the obligation in full.

However, the situation is somewhat different in respect to 11 U.S.C. § 523(a)(2)(A) in that there is no question that the adopted statement in the Business Loan Agreement was not true. Notwithstanding the requirement of Fed. R. Civ. P. 56(e)(2), Debtors did not provide an opposing affidavit to counter the statement in PNC's affidavit regarding its reliance on the BLA in making the loan. Nor is there before the court any competent evidence in support of the allegations contained in the Debtors' response to the Motion that no money was advanced as a result of the loan transaction and that the execution of the documents was necessary due to PNC's loss of the original documentation.

However, after consideration of all of the matters submitted, and particularly the absence of any other factor indicating fraud or concealment on the part of Debtors, the court finds that the

ends of justice would be served by a trial on the merits as opposed to granting summary judgment. The falsity of the statement in the BLA would have been readily ascertainable by the exercise of due diligence by PNC. On the other hand, Debtors' failure to submit an opposing affidavit containing the information set out in their response may well have been a calculated act to avoid a perjury prosecution.

        An appropriate order will be entered.

cc:    Shannon Brickell Kreshtool, Esq., Weinstock, Friedman & Friedman, P.A., 4 Reservoir Circle, Baltimore, MD 21208
Alex Bognar, Esq., 223 N. Prospect Street, Ste. 207, Hagerstown, MD 21740

**End of Memorandum**